CHICAGO TRANSIT AUTHORITY, Plaintiff-Appellee, v. AMALGAMATED TRANSIT UNION LOCAL 308, Defendant-Appellant.

First District (2nd Division)   No. 1—91—0431

Opinion filed March 16, 1993.

Jacobs, Burns, Sugarman & Orlove, of Chicago (Marisel A. Hernandez, of counsel), for appellant.

Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., of Chicago (James J. Convery, of counsel), for appellee.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

The Chicago Transit Authority (CTA) and Amalgamated Transit Union Local 308 agreed to arbitration of their dispute concerning the CTA's discharge of union member Lorain Tolliver. The arbitrator de-

cided in favor of the union and Tolliver. The trial court vacated the arbitrator's award, and the union appeals. We reverse the trial court and reinstate the arbitrator's award because the CTA did not show that the arbitrator exceeded his authority within the standards for limited judicial review of the arbitrator's award.

On February 8, 1988, the CTA suspended its employee, Lorain Tolliver, for 29 days because she damaged two "el" cars by coupling them improperly. She submitted a written grievance claiming her suspension was unjust. On April 14, 1988, the CTA indefinitely suspended Tolliver because she drove an empty train past a danger signal. The CTA discharged her on April 28, 1988, and she again submitted a written grievance. The union represented Tolliver in disciplinary hearings. Since the union and the CTA were unable to negotiate a satisfactory resolution of Tolliver's grievances, the parties agreed to arbitrate the dispute pursuant to article 15 of their collective bargaining agreement. That article provides that the arbitrator's decision "shall be final, binding and conclusive" on the parties.

The CTA and the union agreed to appoint George Larney as arbitrator. The parties stipulated that Larney was to decide on the merits the following issues:

"*Issue 1*

Was the Grievant, Lorain Tolliver, suspended for just cause on February 8, 1988?

If so, was the discipline proper?

If not, what shall be the proper remedy?

*Issue 2*

Was the Grievant, Lorain Tolliver, discharged for just cause on April 28, 1988?

If not, should she be reinstated and upon what terms?"

After hearing testimony from both parties on April 6, 1989, the arbitrator found that Tolliver was responsible for the improper coupling incident which led to her suspension on February 8, 1988, and that the coupling provided just cause for her 29-day suspension. The arbitrator also found that Tolliver drove her train past the danger signal as the CTA alleged, but he found that, because of mitigating factors, that violation did not provide just cause for discharging her. He found that the CTA should have taken into account Tolliver's emotional problems which stemmed from a 1986 incident which occurred while Tolliver was working for the CTA. He ordered the CTA to reinstate Tolliver on inactive status, enroll her in the Employee Assistance Program (EAP) for therapy, and pay her regular wages for as long as she remained in the EAP, up to the 15 months' time she lost

due to the unjust discharge, unless she was declared fit to return to active duty before the 15 months ended.

The CTA sued to vacate the arbitration award because the arbitrator exceeded his authority and considered immaterial evidence. The union and the CTA filed cross-motions for summary judgment on the complaint. The trial court read the entire record of proceedings before the arbitrator, and at the hearing on the motions explained its reasoning:

> "Now it seems to me the arbitrator's function here is first to decide if there's merit to the claims for discharge; in other words, did she do the things that they claim that she did ***.
>
> ***
>
> The next question is do these things merit discharge. ***
>
> Sounds to me like a train thing is serious. These are the kinds of the things that cause accidents. ***
>
> So these little mistakes when you are dealing with this expensive equipment and people's lives are very important. So I have to conclude that the arbitrator[']s conclusion here should have been that there was cause for discharge ***.
>
> I don't think it's any of his business how they run their employee assistance.
>
> ***
>
> He would put her [on] inactive status, cure her, and then put her back. His only power was to put her back on active status. *** I have to say the arbitrator did exceed his authority in this case."

The trial court found that the arbitrator should not have considered Tolliver's emotional difficulties to determine whether the CTA had just cause to discharge her, because "there is no testimony of [her difficulties] except her testimony. There is no medical testimony or anything else." The trial court elaborated: "There was no medical testimony that [her traumatic experiences] would definitely affect a person. I can't reach the conclusion because I'm not a doctor, neither is the arbitrator."

When defense counsel objected that the court was engaging in *de novo* review of the arbitrator's decision, the court responded:

> "I'm limiting [review] to whether [the arbitrator] did act within the confines of the agreement.
>
> I just don't see that he has any authority under the agreement to do anything but determine whether the party was guilty of the conduct and whether the conduct was sufficiently

serious to merit discharge[.] Extenuating circumstances I don't think are any of his business. ***

*** He has a right to order reinstatement, but he doesn't have *** the right to put her on some other status than what she had."

■ On appeal, the union argues that the trial court engaged in too strict a review of the arbitrator's award. We first confront the issue of the proper standard for judicial review of arbitration awards in grievance proceedings under a collective bargaining agreement covering public employees. The parties agree that this court is to apply the common law standard for judicial review of arbitration awards under collective bargaining agreements. We raise on our own the objection that application of this standard renders meaningless a specific provision of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*). We reject our own objection and find that the common law standard of review applies here.

The Uniform Arbitration Act, as drafted by the National Conference of Commissioners on Uniform Laws, applies to all written agreements to submit controversies to arbitration, except that collective bargaining agreements can, by express provision, avoid application of the Act. (7 U.L.A. 5 (1985).) When the Illinois legislature adopted the uniform act, it deleted the provision permitting collective bargaining agreements to avoid the Act. (Ill. Rev. Stat. 1989, ch. 10, par. 101.) Thus, the Illinois Uniform Arbitration Act applies to all written agreements to arbitrate, even those appearing in collective bargaining agreements, unless a statute specifically provides for an exception to the application of the Illinois Uniform Arbitration Act. See, *e.g.*, Ill. Rev. Stat. 1989, ch. 48, par. 1712.

Instead of allowing parties to a collective bargaining agreement to avoid the Illinois Uniform Arbitration Act altogether, the Illinois legislature exempted collective bargaining agreements from judicial review under the statutory standards for such review. Sections 12 and 13 of the uniform act establish standards for judicial vacation or modification of arbitration awards; the Illinois legislature added subsection 12(e), which states:

"Nothing in this Section or any other Section of this Act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a collective bargaining agreement; and the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act." (Ill. Rev. Stat. 1989, ch. 10, par. 112(e).)

Since subsection 12(e) provides the only exception in the Illinois Uniform Arbitration Act for collective bargaining agreements, all arbitration procedures established by the Illinois Uniform Arbitration Act apply to arbitration under collective bargaining agreements not exempted by other statutes, but arbitration awards are subject to review under common law standards rather than the specific standards stated in the Uniform Arbitration Act (*Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 474, 427 N.E.2d 1199).

Our supreme court explained that subsection 12(e) indicates a policy of greater deference to arbitrators, and a lesser role for the courts, in judicial review of arbitration awards under collective bargaining agreements than for other arbitration awards reviewable under the Illinois Uniform Arbitration Act standards. (*Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 418-19, 386 N.E.2d 47.) The courts should engage in less probing review and should be more reluctant to disturb arbitration awards under collective bargaining agreements than awards reviewable under the Illinois Uniform Arbitration Act. *Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985, 988-89, 438 N.E.2d 614.

In 1983, the Illinois legislature enacted the Illinois Public Labor Relations Act, which specifically provides in section 8 that for agreements between public employers and employees, "[t]he grievance and arbitration provisions of any collective bargaining agreement shall be subject to" the Illinois Uniform Arbitration Act. (Ill. Rev. Stat. 1989, ch. 48, par. 1608.) All provisions of the Illinois Uniform Arbitration Act, except the standards for judicial review, applied to arbitration under collective bargaining agreements without this specific provision in the Illinois Public Labor Relations Act. Also, in the absence of section 8, an arbitration award under a proceeding pursuant to a collective bargaining agreement covering public employees is subject to judicial review under the common law standard by the express language of subsection 12(e) of the Illinois Uniform Arbitration Act. Therefore, if the provision in section 8 of the Illinois Public Labor Relations Act making the Illinois Uniform Arbitration Act applicable did not subject grievance arbitration under collective bargaining agreements covering public employees to the greater judicial scrutiny available under the Illinois Uniform Arbitration Act, it apparently has no effect.

The Illinois legislature enacted the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1701 *et seq.*) at the same time as the Illinois Public Labor Relations Act. The Illinois Educa-

tional Labor Relations Act divests courts of jurisdiction to review arbitration awards and grants the Illinois Educational Labor Relations Board exclusive jurisdiction over such awards. (*Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 530-32, 491 N.E.2d 1259.) We find that the provision in section 8 of the Illinois Public Labor Relations Act making the Illinois Uniform Arbitration Act apply to proceedings under that act serves to clarify this procedural distinction between the Illinois Public Labor Relations Act and the Illinois Educational Labor Relations Act, which together "establish a comprehensive regulatory scheme for public sector collective bargaining in Illinois." (*Chicago Board of Education*, 142 Ill. App. 3d at 530; see also Perkovich and Stein, *Challenges to Arbitration Under Illinois Public Sector Labor Relations Statutes*, 7 Hofstra Lab. L.J. 191, 210 (1989).) Therefore, the clause in section 8 of the Illinois Public Labor Relations Act making the Illinois Uniform Arbitration Act applicable does not show that the legislature intended to change the basic policy of exceptional judicial deference to all arbitration pursuant to collective bargaining agreements.

Our supreme court has stated that the Illinois Public Labor Relations Act makes section 12 of the Illinois Uniform Arbitration Act applicable in actions to enforce arbitration awards. (*Board of Education of Community School District No. 1 v. Compton* (1988), 123 Ill. 2d 216, 221-22, 526 N.E.2d 149.) The court subsequently applied the common law standard, rather than the statutory standard, for judicial review of an arbitration award in a proceeding under a collective bargaining agreement covering public employees. (*American Federation of State, County & Municipal Employees v. State* (1988), 124 Ill. 2d 246, 254-55, 529 N.E.2d 534 (*AFSCME*).) In *City of De Kalb v. International Association of Fire Fighters, Local 1236* (1989), 182 Ill. App. 3d 367, 371, 538 N.E.2d 867, the appellate court applied section 12 of the Illinois Uniform Arbitration Act to judicial review of the arbitration award, but the court found that section 12(e), which makes sections 12(a) through (d) inapplicable to collective bargaining agreements, required review under common law standards rather than statutory standards. Although those courts did not address the specific argument we raise, we too find that the exceptional deference to arbitrators' awards in proceedings under collective bargaining agreements still applies to collective bargaining agreements covering public employees.

Our supreme court has established that under the common law standard, the courts cannot disturb an arbitration award under a collective bargaining agreement as exceeding the arbitrator's authority

unless the award does not "draw its essence" from the contract. This test has proven somewhat difficult for courts to apply, as the United States Court of Appeals for the Seventh Circuit explained:

> "The problem with the expression, 'draws its essence from the collective bargaining agreement,' is that it invites the kind of error that the district judge fell into in this case, of setting aside an arbitration award because the judge is not satisfied that the award has a basis in a particular provision of the contract.
>
> Whenever an arbitrator misreads a contract, it is possible to say that his award fails to draw its essence from the contract; that the ground of the award is not the contract but the arbitrator's misreading." (*Ethyl Corp. v. United Steelworkers of America* (7th Cir. 1985), 768 F.2d 180, 184.)

The court then clarified that courts which have so scrutinized the contracts have misunderstood the standard of review, and an arbitrator's construction of his contractual authority does not provide grounds for disturbing the arbitrator's award, even when the construction was "highly improbable." (*Ethyl*, 768 F.2d at 184.) Under the common law standard for judicial review of arbitration awards, "the issue *** is not whether the arbitrator's interpretation of the contract was correct but whether it was a bona fide interpretation of the contract." (*Ethyl*, 768 F.2d at 187.) Our supreme court has similarly clarified that under the common law standard proper for arbitration under collective bargaining agreements, the court will "inquire into the merits of the arbitrator's interpretation *** only *** to prevent a manifest disregard of the agreement between the parties." *Board of Trustees v. College Teachers Union*, 74 Ill. 2d at 421.

Courts are to apply the common law test in a manner consistent with the legislature's intention of providing lesser judicial scrutiny, and a minimal judicial role, in cases involving arbitration under collective bargaining agreements. When the common law test is properly understood, it cannot provide a basis for disturbing an arbitrator's award when there is no such basis under the statutory test. Our supreme court recently restated the statutory standards for judicial review of arbitration awards under the Illinois Uniform Arbitration Act. Under the Illinois Uniform Arbitration Act standard, the courts should vacate an arbitrator's award as exceeding contractual authority only if no " 'fair and reasonable mind[ ] would agree that the construction of the contract *** [was] possible under a fair interpretation of the contract.' " *Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 392, 574 N.E.2d 636, quoting Pirsig, *Some Comments on Arbi-*

*tration Legislation & the Uniform Act,* 10 Vand. L. Rev. 685, 706 (1957).

Since common law review of arbitration awards in proceedings under collective bargaining agreements is more deferential than statutory review, this court cannot disturb an award under common law review where it could not disturb the award under statutory review. Thus, if any fair and reasonable mind could agree with the arbitrator's construction of his authority in this case, we cannot disturb the award. Since we owe this arbitrator the greater deference of common law review, we may not be able to disturb the award even if no fair and reasonable mind would agree with his construction of his authority, as long as his construction "drew its essence" from the collective bargaining agreement. Where any fair and reasonable mind could make the interpretation of the contract which the arbitrator made, we cannot say that the arbitrator manifestly disregarded the contract, so as to justify our intervention.

██ Even under the more probing review available under the Illinois Uniform Arbitration Act, the trial court should not search the record of arbitration proceedings for errors of law or fact: "Gross errors of judgment in law or a gross mistake of fact are not grounds for vacating an award unless the mistakes or errors are apparent upon the face of the award." (*Rauh,* 143 Ill. 2d at 393.) The trial court's comments in this case show that it inappropriately reviewed the entire record to determine whether the arbitrator reached the correct decision. The trial court believed that Tolliver's violations were serious, so it found that "the arbitrator[']s conclusion here should have been that there was cause for discharge." The court also reviewed the arbitrator's weighing of the evidence, holding that the evidence could not support his finding that Tolliver's emotional difficulties contributed to her poor job performance because there was no medical testimony to support the finding. Even if we agree with the trial court's assessment of what the arbitrator's decision "should have been," we must conclude that the trial court's review of the record was more intrusive than is permissible for arbitration awards under collective bargaining agreements, under either the Illinois Uniform Arbitration Act standard or the common law standard applicable here.

The trial court's improper review has no effect on this court's review of the case. The question presented to the trial court, whether the arbitrator exceeded his authority, was strictly an issue of law, since the arbitrator's award showed what he did and what authority he had for those acts. This court does not defer to the trial court on

issues of law. *In re Marriage of Skinner* (1986), 149 Ill. App. 3d 788, 791, 501 N.E.2d 311.

■ The CTA contends first that the arbitrator exceeded his authority when he exempted Tolliver from discharge. The arbitrator nowhere stated that Tolliver was exempt from discharge, nor did the arbitrator state or imply that the CTA would have needed to keep Tolliver on regardless of the extent of her misconduct. The arbitrator decided only that the actual violation, under the actual extenuating circumstances of the case, did not provide just cause for her discharge. In reaching this determination, the arbitrator confined himself to deciding the exact issue the parties agreed to present: "Was *** Tolliver[ ] discharged for just cause ***?"

The arbitrator acknowledged that under the CTA's normal procedures it would generally discharge an employee who committed a third major moving violation within a year, as Tolliver did. The arbitrator interpreted the contract to permit, but not require, discharge after a third major moving violation, and the arbitrator found that he and the CTA should consider extenuating circumstances in deciding whether to discharge an employee following such a violation. The CTA and the trial court interpret the contract to require discharge after a third major moving violation within a year, but neither the court nor the CTA indicates where in the contract they find this requirement. *Cf. Contico International, Inc. v. Local 160* (E.D. Mo. 1990), 738 F. Supp. 1262, 1264 (company rule provided "automatic termination" for employees found sleeping on the job).

The arbitrator found that the CTA could not discharge Tolliver unless it had "just cause" in light of all the circumstances of the case. Since the contract uses the phrase "just cause" without defining it, the arbitrator reasoned that he and the CTA could take into account extenuating circumstances, including Tolliver's emotional problems and her efforts to deal with those problems in the EAP. The trial court found that extenuating circumstances were not any of the arbitrator's business, again without citing a specific source in the contract for that conclusion. The CTA has not shown that all fair minds would agree that the arbitrator could not consider extenuating circumstances, including an employee's emotional problems, in deciding whether the CTA had "just cause" to discharge an employee who committed three major moving violations.

The CTA argues that the arbitrator could not consider participation in the EAP as an extenuating circumstance because the contract provides:

"If an employee is on active status after E.A.P. treatment and fails to maintain satisfactory work performance *** he or she will be subject to normal disciplinary procedures, up to and including discharge."

The arbitrator may have interpreted the clause to mean that the CTA could, under certain circumstances, discharge an employee who had returned to active status following completion of an EAP, if the employee's misconduct were sufficiently severe even in light of the extenuating circumstance of the employee's difficulties and consequent participation in the EAP. The contract contains no provision which expressly precludes the arbitrator or the CTA from considering emotional difficulties, or participation in an EAP, as mitigating factors when considering whether to discharge an employee.

The clause upon which the CTA relies may not apply to Tolliver since she was still in an EAP when she was discharged; the arbitrator could have decided that the clause applied only to employees who had completed an EAP, not to those who were still in EAPs. The clause does not expressly provide that participants in an EAP must be discharged for conduct for which they would probably be discharged if they were not in the EAP. The clause says only that such employees are "subject to" normal discipline. In *AFSCME* an employment rule similarly stated that employees mistreating service recipients were "subject to discharge." (*AFSCME*, 124 Ill. 2d at 257.) Our supreme court noted: "While *** the collective-bargaining agreement could have provided that any employee found guilty of any mistreatment of a service recipient mandated discharge, it did not." *AFSCME*, 124 Ill. 2d at 258.

The CTA has failed to establish that the arbitrator's interpretation of the contract does not draw its essence from the collective bargaining agreement. A fair and reasonable mind could find that the collective bargaining agreement permitted the CTA and the arbitrator to take participation in an EAP into account as a mitigating factor when deciding whether there is just cause to discharge an employee. Since the CTA cannot meet the applicable test for statutory review of arbitration awards, it cannot, perforce, meet the more deferential common law standard.

■ The CTA also argues that the arbitrator exceeded his authority when he sought evidence concerning a November 1986 incident which led to Tolliver's emotional problems. The parties agreed that the arbitrator was to decide whether the CTA discharged Tolliver for just cause. Nothing in the issue or the contract prohibits the arbitrator from looking to the causes of the misconduct for which the CTA

discharged Tolliver. The arbitrator interpreted the issue and his authority broadly, while the CTA contends that he should have confined himself to deciding whether Tolliver was guilty of misconduct, not why. Again, the CTA does not show that the arbitrator's reading of the issues presented and the contract to permit him to look to causes of the misconduct at issue did not draw its essence from the collective bargaining agreement.

■ The CTA claims that the arbitrator, without authority, awarded Tolliver compensation for her 1986 injuries. The arbitrator purported to award Tolliver compensation for her unjust discharge, and the arbitrator found that problems arising from the 1986 incident provided an extenuating circumstance which made the discharge unjust. "Whenever possible a court must construe an award so as to uphold its validity." (*Garver v. Ferguson* (1979), 76 Ill. 2d 1, 10, 389 N.E.2d 1181.) We find that the award can be construed as compensation for unjust discharge, and therefore, the arbitrator's award is valid.

■ The CTA contends that the award conflicts with Illinois worker's compensation law. To support this contention, the CTA presented to the trial court a settlement agreement concerning Tolliver's worker's compensation claim. The settlement was not part of the record before the arbitrator. Since there is no mention of worker's compensation on the face of the arbitrator's award, the alleged conflict with worker's compensation law cannot be more than a "gross error[ ] of judgment in law *** [not] apparent upon the face of the award," and therefore, it "will not serve to vitiate [the] award." (*Garver*, 76 Ill. 2d at 10-11.) Here, too, the CTA's argument fails.

The CTA also argues that the arbitrator exceeded his authority by fashioning this particular award. The CTA construes the award to require it to pay Tolliver regular wages for time she spends on inactive status, in conflict with contractual limitation of the pay available for inactive employees. The contract provides:

"If the [CTA] determines that the employee must be temporarily removed from service to participate in a treatment program, the employee *** will be allowed to utilize available vacation time or personal leave of absence for such a purpose."

The arbitrator stated in his award:

"1. Grievant is to be reinstated immediately but placed on inactive status.

2. Grievant is to be enrolled at once in the Employee Assistance Program where she is to receive the best psychotherapy she can obtain to address her emotional problems.

3. Grievant is to be compensated at a rate of pay she would have begun to earn had she been restored to active duty. Such earnings shall be paid to her while she is enrolled in EAP. Said compensation shall continue to be paid to Grievant for up to fifteen (15) months, equivalent to the time she has lost from work during the period of her discharge or for as long as she remains in the EAP program until she is declared fit to return to duty, whichever comes first.

\* \* \*

7. If, for any reason, the Grievant should decide on her own volition to end her enrollment in the EAP program prior to a determination she is fit to return to duty, all liability on the part of the CTA shall cease."

■ Even under the more probing review permitted by the Illinois Uniform Arbitration Act, this court must construe the award to uphold its validity if possible. (*Rauh*, 143 Ill. 2d at 386.) The arbitrator had authority to order the CTA to reinstate and reimburse Tolliver for all time lost from the unjust discharge. No specific contract provision precludes the arbitrator or the CTA from reinstating an employee to inactive status.

The arbitrator awarded Tolliver pay for time lost, but he made the award payable in installments which could cease for any of several specified reasons before the CTA had fully reimbursed her for time lost. Payments for time lost stop when Tolliver is declared fit to return to active duty. Payments also stop if Tolliver voluntarily ends her enrollment in the EAP. Finally, payments stop after 15 months even if Tolliver remains in the EAP and unfit for active duty, because by that time the CTA will havé compensated her fully for her time lost. Thus, the award is a permissible award of reimbursement for time lost, with certain conditions which would allow the CTA to reimburse Tolliver less than fully for her lost time. The CTA has not shown that all reasonable minds would agree that the arbitrator did not have contractual authority to render this award of payments.

■ At oral argument, we suggested that the arbitration award could be vacated because it contravenes public policy favoring safety for users of public transportation. (See *Board of Trustees v. College Teachers Union*, 74 Ill. 2d at 423-24.) Counsel for the CTA correctly observed that the arbitrator's award in this case does not adversely affect passenger safety because the arbitrator did not order the CTA to place Tolliver on active status. Tolliver will not drive another train unless the CTA, through its EAP, determines that Tolliver is fit to return to duty.

We emphasize that we do not find the trial court's interpretation of the contract incorrect, and we do not disagree with the trial court's appraisal of the evidence. We find only that the trial court should not have appraised the evidence, and it should not have interpreted the contract. The court is not to decide what the contract means; the court should decide only whether the arbitrator's award draws its essence from the contract. If any fair and reasonable mind could interpret the contract in a way that supports the arbitrator's award, the arbitrator's award draws its essence from the contract. We hold that the trial court could not properly vacate the award because the arbitrator's award here draws its essence from the collective bargaining agreement.

The parties here bargained for this arbitrator's decision concerning whether the CTA had just cause to discharge Tolliver, and if not, whether she should be reinstated and upon what terms. The arbitrator decided just those issues. Since the parties have received the benefit of their bargain, they should not now be heard to complain.

Accordingly, we reverse the trial court and remand for confirmation of the arbitrator's award.

Reversed and remanded with directions.

SCARIANO and DiVITO, JJ., concur.