THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES *et al.*, Plaintiffs-Appellants, v. AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (AFSCME), Defendant-Appellee.

Fourth District   No. 4—98—0569

Opinion filed August 28, 1998.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Paul Racette (argued), Assistant Attorney General, of counsel), for appellants.

Gilbert Feldman (argued), of Cornfield & Feldman, of Chicago, for appellee.

JUSTICE COOK delivered the opinion of the court:

This is the second appeal of this case to this court. In our prior opinion, we affirmed the trial court's dismissal of the plaintiffs' application to vacate an arbitration award. *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 284 Ill. App. 3d 963, 673 N.E.2d 447 (1996). On further review, the Supreme Court of Illinois, without reaching the merits of the case, *sua sponte* held this court lacked jurisdiction to consider the appeal because the circuit court never granted an order confirming the award and never entered judgment in conformity with the award, as sections 12 and 14 of the Uniform Arbitration Act (710 ILCS 5/12, 14 (West 1994)) require. *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 182 Ill. 2d 234, 239, 695 N.E.2d 444, 446 (1998). On this basis our judgment was vacated and the appeal dismissed.

Defendant then filed a motion to confirm the arbitration award in the trial court for the sole purpose of curing the jurisdictional defect. Following a hearing held by conference call, the trial judge allowed the motion and confirmed the arbitration award. Plaintiffs filed a second notice of appeal.

Before this court, defendant has now filed a motion to reinstate our prior opinion contending "no issue of law or fact arises on this appeal that was not decided by this Court in the first appeal." Although plaintiffs object to disposing of this appeal without briefing or argument, they do not suggest that additional, substantive matters relating to the underlying merits of the case were placed before the trial court for further review. Indeed, the supporting record, filed with the motion, reveals that the proceedings that took place after the issuance of the supreme court's mandate were for the sole purpose of curing

the defect detected by the supreme court that made the trial court's previous order interlocutory and unreviewable. The trial court left undisturbed its previous order denying and dismissing the application to vacate the award on the basis the application to vacate was filed 91 days after the award was received.

Having decided the merits of this case once before, we are not inclined to revisit the same issues we previously reviewed. Accordingly, we grant defendant's motion to reinstate our prior decision and reenter the same as an opinion of the court. For the convenience of the reader, we reproduce that decision, in full, below.

Plaintiffs Illinois Department of Central Management Services (CMS) and Illinois Department of Mental Health and Developmental Disabilities (Department) appeal the circuit court's dismissal on timeliness grounds of their application to vacate an arbitration award. We affirm.

The American Federation of State, County and Municipal Employees (union) filed a grievance on behalf of Bill McGownd for his June 6, 1994, discharge by the Department from his position as a mental health technician II. The Department discharged him for one incident of "using abusive, threatening or profane language towards recipients or staff," and another incident in which he allegedly physically and verbally abused a blind patient at the residential treatment facility for mentally retarded citizens where he worked. The arbitrator sustained the grievance because of the Department's failure to abide by the "prompt discipline" provisions of the collective-bargaining agreement. It found no justification for delays of five months and eight months in the Department's investigations of the respective charges, and accordingly ordered McGownd reinstated and made whole for his losses. The award issued on April 3, 1995, and the Department received it on April 6.

Plaintiffs filed an application to vacate the award on July 6, 91 days later, alleging the award was against public policy and the arbitrator exceeded his authority. That application stated it was "brought pursuant to §§ 12 and 13 of the Uniform Arbitration Act [(Act)] (710 ILCS 5/12 and 5/13 (West 19[94]))." The union moved to dismiss the application as untimely under the 90-day time limit imposed by section 12(b) of the Act. 710 ILCS 5/12(b) (West 1994). Plaintiffs then asserted that the Act did not apply or at least that the time limits of the Act did not apply. The motion was granted, and plaintiffs filed this appeal.

The sole issue before us is the propriety of the dismissal of plaintiffs' petition to vacate. The parties agree the petition was filed 91 days after the Department received the award. Accordingly, the

only dispute concerns interpretation and application of the relevant statutes. This is a question of law, on which we need not defer to the conclusions reached by the circuit court. See *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 392, 642 N.E.2d 486, 491 (1994).

■ There are several relevant provisions. Since this case concerns an award entered under a collective-bargaining agreement with noneducational public employees, it is governed by the Illinois Public Labor Relations Act (Labor Relations Act) (5 ILCS 315/1 *et seq.* (West 1994)). Section 8 of the Labor Relations Act provides "[t]he grievance and arbitration provisions of any collective[-]bargaining agreement shall be subject to the [Act]." 5 ILCS 315/8 (West 1994). Section 12(b) of the Act provides "[a]n application under this Section shall be made within 90 days after delivery of a copy of the award to the applicant," unless the award was procured by "undue means" (710 ILCS 5/12(b) (West 1994)), which is not alleged in this case. Section 12(e) of the Act then provides:

> "Nothing in this Section or any other Section of this Act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a collective[-]bargaining agreement [(the first clause)]; and the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act [(the second clause)]." 710 ILCS 5/12(e) (West 1994).

Finally, section 13—205 of the Code of Civil Procedure (Code) provides there is a five-year limitations period on "actions *** on awards of arbitration." 735 ILCS 5/13—205 (West 1994).

In *Board of Education of Meridian Community Unit School District 101 v. Meridian Education Ass'n*, 112 Ill. App. 3d 558, 445 N.E.2d 864 (1983), the fifth district considered the interplay of sections 12(b) and (e) of the Act. It held that in actions to modify, vacate or correct awards under collective-bargaining agreements, the first clause of section 12(e) of the Act overrode the jurisdictional time limits of section 12(b) of the Act. *Meridian*, 112 Ill. App. 3d at 562, 445 N.E.2d at 867. Significantly, it based this result solely on the presumption that the wording of a statute is not surplusage. *Meridian*, 112 Ill. App. 3d at 562, 445 N.E.2d at 867.

*Meridian* did not, of course, consider section 8 of the Labor Relations Act, which specifically provided the Act would apply, because *Meridian* was decided in 1983 and the Labor Relations Act did not become law until 1984. See Pub. Act 83—1012, eff. July 1, 1984 (1983 Ill. Laws 6830, 6859). The Labor Relations Act, together with the Illinois Educational Labor Relations Act (Educational Act) (115 ILCS 5/1 *et seq.* (West 1994)), constitutes an "attempt to provide 'a comprehensive

regulatory scheme for public sector [collective] bargaining in Illinois.' " *Board of Education of Community School District No. 1, Coles County v. Compton*, 123 Ill. 2d 216, 221, 526 N.E.2d 149, 152 (1988), quoting *Chicago Board of Education v. Chicago Teachers Union*, 142 Ill. App. 3d 527, 530, 491 N.E.2d 1259, 1261 (1986). *Compton* observed section 8 of the Labor Relations Act "explicitly provides for enforcement of arbitration awards in accordance with the [Act]." *Compton*, 123 Ill. 2d at 221-22, 526 N.E.2d at 152.

In 1993, however, the second district followed *Meridian* and held section 12(e) of the Act eliminated the time limits of section 12(b) of the Act in actions to vacate Labor Relations Act awards, section 8 of the Labor Relations Act notwithstanding. *Hyatte v. Quinn*, 239 Ill. App. 3d 893, 897-98, 607 N.E.2d 321, 323-24 (1993). The *Hyatte* court merely cited *Meridian*, however, and did not discuss how section 12(e) of the Act and section 8 of the Labor Relations Act were to be reconciled. *Hyatte*, 239 Ill. App. 3d at 897-98, 607 N.E.2d at 323-24.

In *Chicago Transit Authority v. Amalgamated Transit Union Local 308*, 244 Ill. App. 3d 854, 860, 614 N.E.2d 120, 124 (1993), the first district held that greater deference is given arbitration awards under common law standards than is given under the standards of the Act. (We question whether that is true. As *Transit Authority* concedes, review under the Act is itself very deferential. *Transit Authority*, 244 Ill. App. 3d at 867, 614 N.E.2d at 128.) *Transit Authority* went on to conclude that the reason for section 12(e) was to provide for "greater deference to arbitrators, and a lesser role for the courts, in judicial review of arbitration awards under collective[-]bargaining agreements." *Transit Authority*, 244 Ill. App. 3d at 860, 614 N.E.2d at 124. The first district then considered whether the 1983 enactment of the Illinois Public Labor Relations Act (see Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1601 *et seq.*), including section 8, which provided that "[t]he grievance and arbitration provisions of any collective[-]bargaining agreement shall be subject to" the Act (Ill. Rev. Stat. 1989, ch. 48, par. 1608), affected judicial review. The first district stated that if section 8 did not subject public employee grievance arbitration "to the greater judicial scrutiny available under the [Act], it apparently has no effect." *Transit Authority*, 244 Ill. App. 3d at 860, 614 N.E.2d at 124.

To avoid this perceived diminishment in the deference given arbitration pursuant to collective-bargaining agreements, the first district concluded that the purpose of section 8 was to clarify the procedural distinction between the Illinois Public Labor Relations Act and the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1701 *et seq.*). Both those acts were enacted at the same time. They differ in that the Illinois Educational Labor Relations Act

divests courts of jurisdiction to review arbitration awards and grants the Illinois Educational Labor Relations Board exclusive jurisdiction over such awards. *Transit Authority*, 244 Ill. App. 3d at 860-61, 614 N.E.2d at 124. We disagree with *Transit Authority* on two counts. First of all, while we are uncertain why nonuniform section 12(e) was enacted in the first place, we do not see that heightened judicial review will result from applying the Act to collective-bargaining agreement arbitrations. Second, we are unwilling to ignore the clear language of section 8 that grievance and arbitration provisions of collective-bargaining agreements "shall be subject to" the Act. 5 ILCS 315/8 (West 1994).

Public Act 83—1012 enacted the Labor Relations Act (see 5 ILCS 315/1 *et seq.* (West 1994); Pub. Act 83—1012, eff. July 1, 1984 (1983 Ill. Laws 6830)), and Public Act 83—1014 enacted the Educational Act (see 115 ILCS 5/1 *et seq.* (West 1994); Pub. Act 83—1014, eff. January 1, 1984 (1983 Ill. Laws 6870)). Public Act 83—1012 grew out of Senate Bill 536. Pub. Act 83—1012, eff. July 1, 1984 (1983 Ill. Laws 6830). Senate Bill No. 536 went through several revisions before becoming law. As sent to the Governor by the General Assembly for his approval on June 30, 1983, the bill contained the language of section 8 at issue here. 83d Ill. Gen. Assem., Senate Bill 536, 1983 Sess., at 15. As the bill existed at that time, it applied to *all* public employees, *including* educational employees. 83d Ill. Gen. Assem., Senate Bill 536, 1983 Sess., at 4. Educational employees were only removed from its ambit by the Governor's amendatory veto. Governor's Amendatory Veto, Senate Bill 536 (September 23, 1983). Thus the language in section 8 of the Labor Relations Act could not be intended to differentiate between educational and noneducational public employees, because it was present in the bill when the bill applied to both.

We also presume that the wording of a statute is not mere surplusage. *Meridian*, 112 Ill. App. 3d at 562, 445 N.E.2d at 867; *People v. Frieberg*, 147 Ill. 2d 326, 349, 589 N.E.2d 508, 519 (1992). Given our rejection of the first district's holding that the language is intended to clarify a distinction that did not exist when it was drafted, we see no reasonable interpretation except that section 8 is intended to overrule the first clause of section 12(e) of the Act and apply the Act's procedures in a limited situation: in the context of arbitrations under collective-bargaining agreements involving *noneducational* public employees. The legislature did not simply repeal section 12(e) because the section still has effect in cases other than public labor relations cases. The rules that the specific controls the general (see *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195-96, 595 N.E.2d 561, 563 (1992)) and that the more recently enacted of two conflicting

statutes will prevail (*County of Macon v. Edgcomb*, 274 Ill. App. 3d 432, 437, 654 N.E.2d 598, 602 (1995); *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 282, 644 N.E.2d 1159, 1162 (1994)) both support this result.

Courts must evaluate a statute as a whole, construing each provision in connection with all others. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397, 634 N.E.2d 712, 714 (1994). Section 11 of the Act instructs courts to confirm an award upon application of a party "unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award," in which case the court is to proceed under section 12 or 13 of the Act. 710 ILCS 5/11 (West 1994). If we adopted plaintiffs' construction of section 12(e) of the Act, the phrase "time limits hereinafter imposed" in section 11 of the Act would either continue to refer to the 90-day limits in sections 12 and 13 or would suddenly refer to the five-year deadline in the Code. Neither alternative is acceptable.

■ If section 12(e) of the Act eliminates the deadlines for filing motions to vacate or modify or correct but has no effect on actions to confirm, the anomalous result is that while a party has five years to move to vacate, modify or correct, the opposing party can request the court to confirm the award if the action is not filed within 90 days (the "time limits hereinafter imposed")—and the court would be required to do so. See 710 ILCS 5/11 (West 1994) (the court "shall" confirm unless grounds to vacate or modify or correct are urged in timely fashion); *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96, 566 N.E.2d 1283, 1301 (1990) (unless context indicates otherwise, "shall" is mandatory). The court would thereafter have to enter judgment on the order. 710 ILCS 5/14 (West 1994). We must assume that the legislature did not intend such an absurdity. *People ex rel. Bonefeste v. B.D.H. Rentals*, 277 Ill. App. 3d 614, 623, 660 N.E.2d 1012, 1018 (1996), citing *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 541, 605 N.E.2d 539, 542 (1992).

The other alternative, that the parties would have to wait five years before being able to confirm an award, is even less palatable. Section 2 of the Labor Relations Act explicitly states that "[i]t is the public policy of the State of Illinois that where the right of employees to strike is prohibited by law [as in this case (see 5 ILCS 315/8 (West 1994))], it is necessary to afford an alternate, *expeditious, equitable* and *effective* procedure for the resolution of labor disputes subject to approval procedures mandated by this Act." (Emphasis added.) 5 ILCS 315/2 (West 1994). A five-year statute of limitations on enforcement would be, to put it mildly, less than "expeditious." Also, the collective-bargaining agreements themselves last less than five years and are

based in part on the results in past arbitrations. Section 13—205 of the Code, as it applies to actions on awards of arbitration, is more a statute of limitations on enforcement than it is on commencement of an action. To be enforced, arbitration awards must be reduced to judgment in a court of law. The five-year limit of section 13—205 is a limitation on court actions, and has nothing to do with commencement of the arbitration proceeding or the securing of the arbitration award. There is no cause of action on an arbitration award until the award is entered.

Plaintiffs complain it would be unfair to require them to file petitions to vacate within 90 days when the parties in private labor arbitration have five years to do so. First, the legislature may treat different situations differently. Second, this limitations period cuts both ways, affecting both employers and employees. Finally, while 90 days is much shorter than five years, plaintiffs advance no justification for comparing their situation with parties in private labor arbitration. More compelling to us are comparisons of the time limits in this case and cases involving security employees, peace officers or firefighters (90 days) (5 ILCS 315/14(k) (West 1994)), or educational employees (six months) (115 ILCS 5/15 (West 1994)).

Nor does our result here conflict with the decisions of this and other districts finding the second clause of section 12(e) of the Act (dealing with grounds for vacating, modifying, or correcting an award) applicable in this type of case. See, *e.g.*, *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 197 Ill. App. 3d 503, 507, 554 N.E.2d 759, 762 (1990); *Transit Authority*, 244 Ill. App. 3d at 861, 614 N.E.2d at 125. The first clause of section 12(e) of the Act, which says that the Act does not apply, must be superseded by section 8 of the Labor Relations Act, which says that the Act does apply. The second clause of section 12(e), which says that even where the Act applies, the grounds for vacating, modifying, or correcting shall be those which existed at common law, is not inconsistent with the section 8 requirement that the Act apply. The decisions keeping the second clause of section 12(e) of the Act in force promote the same policy considerations as our decision here: expeditious final resolution of disputes. Also, the Act's severability clause (710 ILCS 5/21 (West 1994)) allows application of the first clause of section 12(e) of the Act in this context despite the earlier decisions invalidating application of the second clause.

For the reasons above stated, we affirm the judgment of the circuit

court of Morgan County dismissing the application to vacate the arbitration award as untimely.

Affirmed.

GARMAN, P.J., and McCULLOUGH, J., concur.