THE CITY OF CHICAGO, Petitioner-Appellee, v. AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, Respondent-Appellant.

First District (1st Division)   No 1—95—2055

Opinion filed September 3, 1996.

Cornfield & Feldman, of Chicago (Gilbert Feldman, of counsel), for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff City of Chicago (City) filed an application to vacate an arbitration award decided in favor of defendant American Federation of State, County and Municipal Employees, Council 31 (AFSCME) in a labor dispute. The circuit court of Cook County granted the City's application. AFSCME now appeals.

The record on appeal indicates the following facts. The City is an employer and AFSCME is a labor organization that entered into a collective bargaining agreement (CBA) on July 27, 1988. Section 1.2 of article 1 of the CBA generally provides that "[t]he Employer will assign bargaining unit work to bargaining employees only." However, section 1.2 also provided as follows:

"Nothing in this Section shall limit the Employer from subcontracting work to nonemployees, except as this inherent right may be subject to specific limitation, if any, in this Agreement."

Article 22 of the CBA addressed the issue of subcontracting as follows:

"The Employer will attempt to have employees perform bargaining unit work where practicable; however, the Employer reserves the right to contract out work for reasons of efficiency or economy. Prior to sub-contracting bargaining unit work, the Employer shall give notice of such contemplated action at least 30 days prior to entering into a sub-contract.

The notice shall be in writing and shall contain the name and address of the party who will perform the work, a description of

the work to be performed, any contemplated impact on bargaining unit employees, and any other relevant data to enable the Union to discuss with the Employer alternatives to such action.

Upon request, the Employer shall meet with the Union within 3 days of such request.

If bargaining unit employees would be laid off by the proposed sub-contracting, the Employer shall make available, on a seniority basis, equal-rated permanent jobs the Employer has declared to be vacant in the Department, or other Departments, in that order, provided the laid off employees have the then present ability to perform the required work without further training. However, the employee shall be provided with a reasonable amount of orientation to allow him or her to perform the work.

Prior to the sub-contracting of bargaining unit work, the Employer, the Union, and the proposed sub-contractor shall meet to discuss the employment of employees subject to layoff. The Employer will request that the sub-contractor hire laid off employees."

Among the employees covered by the CBA were security guards working in the City's public library system, though such work was also performed by off-duty police officers.

This dispute involves the subcontracting of work for security guards at the Harold Washington Library, which was opened in October 1991. During meetings in late 1990, the City informed AFSCME that the City was considering subcontracting the security work at the new library. On May 8, 1991, after hearing rumors that the work was going to be contracted out, AFSCME wrote the City reminding the City of its obligations under article 22 of the CBA. Although the City decided in May 1991 that the security work would be contracted out, it did not execute a contract for the work until September 16, 1991, when it signed an agreement with Tishman-Midwest, a private firm which had submitted the lowest bid to the City. Tishman-Midwest then entered into a contract with B&D Services to provide the security. The City did not notify AFSCME of the subcontract in writing until September 27, 1991.

By the time the Harold Washington Library opened, the City had closed certain library facilities and had stopped using certain other facilities as libraries. However, no City employees were laid off as a result of these changes.

Pursuant to the CBA, AFSCME filed a grievance alleging that the City had violated article 22 of the CBA. The grievance was processed under the terms of the CBA and ultimately proceeded to arbitration on June 30 and September 23, 1990.

On February 14, 1994, the arbitrator issued an opinion and award

in favor of AFSCME. The arbitrator concluded that the City had violated article 22 of the CBA. The arbitrator then addressed the formulation of a remedy that would, as closely as possible, restore the status quo *ante*. The arbitrator directed the City to cancel the portion of its agreement with Tishman-Midwest regarding security work at the Harold Washington Library. The arbitrator directed the City to submit the relevant contract data to AFSCME and to meet with AFSCME within three days of AFSCME's request.

The arbitrator denied AFSCME's request to require that the security guards at the Harold Washington Library be represented by AFSCME and that the positions be accreted into the bargaining unit. The arbitrator reasoned that such a remedy would deny the City its right to subcontract and would presuppose that AFSCME would succeed in its effort to dissuade the City from subcontracting. Thus, the arbitrator concluded that such relief would go beyond restoration of the status quo.

However, the arbitrator further stated that merely requiring the City to give notice and meet with AFSCME would not effectively restore the status quo. Thus, in order to make AFSCME whole, the arbitrator ordered the City to pay AFSCME a sum equal to what it would have paid bargaining unit employees under the CBA (the number of employees to be calculated by the percentage of library security guards that fall under the CBA), increased by the amount of union dues such employees would have paid AFSCME. This sum was to accrue from the date the private guards were employed at the library until the date the City complied with the requirements of article 22. The arbitrator further directed that this sum was to be distributed to the bargaining unit or "utilized by the Union in the meeting process with the City under this remedy." The arbitrator recognized that, given the time elapsed and the staffing requirements of the library, the award could be "quite substantial," but stated that the relief was "required or at least must be factored into the topics for discussion once the parties meet."

On May 13, 1994, the City filed its application to vacate the arbitration award, alleging that the requirement that it pay AFSCME what it would have paid bargaining unit employees under the CBA, an amount allegedly exceeding $1 million, was punitive in nature. The City alternatively sought that only that portion of the award be vacated.

During argument on the matter, the trial court stated that it did not understand the challenged portion of the award and suggested remanding the matter to the arbitrator for clarification. AFSCME argued that the damages were awarded in order that AFSCME could

exchange them for the City's agreement not to subcontract the work. The trial court stated that such a rationale would be unacceptable, but entered an order vacating the challenged portion of the award and remanding the case to the arbitrator for clarification.

On January 27, 1995, following the submission of supplemental memoranda, the arbitrator issued a supplemental opinion. The arbitrator explained in part:

> "With the remedy I imposed, the Union would then be able to better discuss its requests with the City from a position of having something to trade in its efforts to get through the discussion process what I would not give them—the folding in of the guard positions at the Washington Library ***."

The arbitrator also wrote:

> "The remedy was, in labor relations terms, 'make whole relief'—a form of relief equivalent to compensatory relief. It was not intended to be punitive."

On April 12, 1995, the City filed a motion in the circuit court of Cook County to confirm the court's prior order vacating the challenged portion of the award. The trial court granted that motion on May 22, 1995. AFSCME filed a timely notice of appeal to this court.

## I

The primary issue on appeal is whether the trial court erred in granting the motion to vacate the arbitration award. The City's motion to vacate claimed that the portion of the award representing what the City would have paid bargaining unit employees under the CBA was a punitive award.

■ Initially, this court must address the standard of review. Section 8 of the Illinois Public Labor Relations Act requires that the arbitration provisions of a CBA of the sort at issue here shall be subject to "the Illinois 'Uniform Arbitration Act.' " 5 ILCS 315/8 (West 1992). However, section 12 of the Uniform Arbitration Act, as adopted in Illinois, provides in part that the grounds for vacating an arbitration award under a CBA shall be those which existed before Illinois adopted the Uniform Arbitration Act. 710 ILCS 5/12(e) (West 1992). Accordingly, our supreme court has stated in a case arising under the Illinois Public Labor Relations Act that the arbitration award must be enforced if the arbitrator acts within the scope of his authority and his award draws its essence from the CBA. *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 254, 529 N.E.2d 534, 537 (1988).

This court has held that punitive damages may be awarded in arbitration, but only where the parties have expressly agreed to the arbitrators' authority to award punitive damages. *Edward Electric*

*Co. v. Automation, Inc.,* 229 Ill. App. 3d 89, 105, 593 N.E.2d 833, 843 (1992). Although *Edward Electric Co.* did not involve a public employment CBA, the decision was based on section 12(a)(3) of the Uniform Arbitration Act, as adopted in Illinois, which provides that an award shall be vacated where the arbitrators have exceeded their powers. See *Edward Electric Co. v. Automation, Inc.,* 229 Ill. App. 3d at 96, 593 N.E.2d at 837.

In sum, an arbitrator who exceeds his or her authority violates both the Illinois common law and statutory standards. Accordingly, it would appear that the rule established in *Edward Electric Co.* is equally applicable in this case. The question of whether the arbitrator exceeded his authority is one of law, subject to *de novo* review; this court need not defer to the determination of the trial court. *Chicago Transit Authority v. Amalgamated Transit Union Local 308,* 244 Ill. App. 3d 854, 863-64, 614 N.E.2d 120, 126 (1993).

On appeal, AFSCME does not contend that an award of punitive damages was within the arbitrator's authority. Rather, AFSCME contends that the challenged portion of the award was compensatory, not punitive. Thus, this court must turn to the question of whether the damages at issue were punitive or compensatory.

A

■ AFSCME first argues that the award should be considered compensatory under existing Illinois case law. AFSCME, citing *Kelsay v. Motorola, Inc.,* 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359 (1978), maintains that the question is one of the "intent" of the arbitrator. *Kelsay* does not directly refer to the "intent" behind an award. *Kelsay* states:

> "Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future." *Kelsay,* 74 Ill. 2d at 186, 384 N.E.2d at 359.

In determining whether an award is punitive, this court generally begins by examining the plain wording of the opinion and award.[1] See *Board of Education of Community High School District No. 155*

---

[1]Although there does not appear to be any Illinois law directly on point, some federal courts have ruled that the language employed by the arbitrator is not determinative of whether the award is to be deemed punitive. See, *e.g.,* *Georgia Power Co. v. International Brotherhood of Electrical Workers, Local 184,* 995 F.2d 1030, 1032 (11th Cir. 1993); *Westinghouse Electric Corp. v. International Brotherhood of Electrical Workers, Local 1805,* 561 F.2d 521, 524 (4th Cir. 1977); *Bethlehem Steel Corp. v. United Steelworkers of America,* 138 L.R.R.M. (BNA) 2091, 2092-94 & 2094 n.5 (D. Md. 1991). This approach

*v. Illinois Educational Labor Relations Board*, 247 Ill. App. 3d 337, 348, 617 N.E.2d 269, 277 (1993).

In this case, the arbitrator stated in his supplemental opinion that the award was not intended to be punitive. However, in his initial opinion, the arbitrator not only referred to restoring the status quo, but also quoted at length from *Milprint, Inc.*, 51 Lab. Arb. Rep. (BNA) 748, 750-51 (1968) (Somers, Arb.), including the following passage:

> "Insistence that the Company enter into discussions with the Union now would not necessarily deter the Company from such contractual violations in the future when sub-contracting arrangements are being considered. A remedy which involves no penalty or deterrent for the violator and no solace for the violated can hardly be considered an appropriate remedy."

Thus, despite the arbitrator's protestations to the contrary in his supplemental opinion, the award in this case initially was justified in part as a "penalty or deterrent," which are precisely the purposes of punitive damages as outlined in *Kelsay*. Moreover, the language quoted above distinguishes this case from *Board of Education*, in which this court determined that the arbitrator's focus was on remedy and compensation, not on punishment. *Board of Education*, 247 Ill. App. 3d at 348, 617 N.E.2d at 277. During oral argument, AFSCME suggested that the arbitrator's quotation of *Milprint* did not mean that the arbitrator agreed with the reasoning therein. This argument is unpersuasive.

The remaining Illinois cases cited by AFSCME do not address the issue of whether an award was punitive or compensatory. Two of those cases are cited for the proposition that an arbitrator's award is to be upheld even where it is irrational or incomprehensible. However, where the bargaining agreement does not provide for punitive damages, an award that is punitive is outside the authority of the arbitrator, regardless of whether that award is rational, comprehensible, or neither.

## B

■ AFSCME next cites a number of federal cases to argue that the challenged portion of the award is a standard compensatory award to remedy a breach of "meet-and-discuss" provisions such as article 22 of the CBA at issue. However, with one exception, all of the cases AFSCME cites involve compensation awarded to employees injured by the employer. See *Local 879 v. Chrysler Marine Corp.*, 819

seems consistent with the rule that the question of whether the arbitrator has exceeded his or her authority is a question of law.

F.2d 786, 788 (7th Cir. 1987) (imposition of severance plan the "most viable way of affording employees *** meaningful relief"); *Dreis & Krump Manufacturing Co. v. International Ass'n of Machinists & Aerospace Workers, District No. 8,* 802 F.2d 247, 249 (7th Cir. 1986) (arbitrator ordered company to make laid-off employee whole for wages and benefits lost due to subcontracting); *United Electrical, Radio & Machine Workers of America Local 1139 v. Litton Microwave Cooking Products, Litton Systems, Inc.,* 728 F.2d 970, 971 (8th Cir. 1984) (arbitrator ordered Litton to grant employees a second paid vacation); *Desert Palace, Inc. v. Joint Local Executive Board,* 679 F.2d 789, 793-94 (9th Cir. 1982) (arbitrator awarded cocktail servers sum equal to tips servers should have received under agreement). In this case, the arbitrator made the award to the Union, which was not required to distribute the funds to the employees. This aspect of the award further suggests that the award is punitive. See, *e.g., Island Creek Coal Co. v. District 28, United Mine Workers of America,* 29 F.3d 126, 130-31 (4th Cir. 1994). Even though the award gives AFSCME the option of distributing the funds to the employees, it cannot be characterized as compensating the employees because: (1) there was no guarantee that AFSCME would exercise that option; and (2) AFSCME has failed to point to anything in the record indicating that the existing employees lost wages or were otherwise damaged.

The exceptional case AFSCME cites is *Leona Lee Corp.,* 60 Lab. Arb. Rep. (BNA) 1310 (1972) (Gorsuch, Arb.), *enforced International Ass'n of Heat & Frost Insulators & Asbestos Workers, Local 66 v. Leona Lee Corp.,* 84 L.R.R.M. (BNA) 2165 (W.D. Tex. 1973), *aff'd,* 489 F.2d 1032 (5th Cir. 1974). In *Leona Lee,* the arbitrator awarded the union dues and damages for a loss of bargaining power; the award was upheld against the claim that the award was punitive. However, *Leona Lee* is distinguishable on at least three grounds. First, the fifth circuit apparently does not bar arbitration awards of punitive damages, whereas some other circuits have barred such awards. See *Island Creek Coal Co.,* 29 F.3d at 131-32 & 132 n.9. Second, the award in *Leona Lee* was apparently a lump sum in addition to dues. The award here was based on the pay of hypothetical employees in addition to dues, which may be construed as a double recovery (and perhaps punitive as a result) because said dues would probably be included in such pay. Third, like the *Chrysler Marine Corp.* decision, the employer in *Leona Lee* had transferred its assets to a successor, a factor which undoubtedly affects the bargaining power of a union with a particular employer, but which does not exist in this case. See *Chrysler Marine Corp.,* 819 F.2d at 787; *Leona Lee,* 480 F.2d at 1033 n.2.

AFSCME also cites a number of arbitration opinions that purportedly support the award in this case. However, all of these cases involve awards to employees, rather than the union. Moreover, none of these awards were judicially reviewed, which makes them of limited value in this context.

## C

■ AFSCME also argues that insofar as the award was intended to restore the status quo *ante*, it is supported by decisions of the National Labor Relations Board (NLRB) and judicial decisions enforcing or affirming NLRB decisions. The cases cited by AFSCME involve the authority of the NLRB to remedy unfair labor practices; such remedies may include reinstatement of employees with or without back pay. See, *e.g.*, *N.L.R.B. v. Townhouse T.V. & Appliances, Inc.*, 531 F.2d 826, 830 (7th Cir. 1976). However, these cases also establish that NLRB orders must be remedial, not punitive. See, *e.g.*, *Townhouse T.V. & Appliances, Inc.*, 531 F.2d at 830. Thus, it is not surprising that these cases, like most of the others cited by AFSCME, involve reinstatement or payments to employees or both, rather than payment to the union.

In sum, we conclude that the trial court did not err in vacating the arbitration award, given the facts and circumstances presented in this case.

## II

■ AFSCME argues in the alternative that the trial court should have remanded the matter to the arbitrator to conform the remedy to the principles of compensation. AFSCME, citing *Union Pacific R.R. Co. v. United Transportation Union*, 3 F.3d 255 (8th Cir. 1993), claims that in the absence of a remand, the contract violation would go unremedied. There does not appear to be any Illinois case law directly on point (including the one Illinois case cited by AFSCME).

It must be noted that the trial court vacated the entirety of the arbitration award, not just the portion to which the City objects. For example, the City did not challenge the award of uncollected union dues. Indeed, the record shows that the trial court previously had confirmed the other portions of the award. The record discloses no explanation for the trial court's reversal of opinion.

Accordingly, we conclude that the trial court erred in vacating the other portions of the arbitration award, given the record on appeal. We also conclude that remanding the case to the trial court for reinstatement of the other portions of the award will obviate the need to remand the matter to the arbitrator, as the parties did not dispute whether these portions of the award were compensatory in this case.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded for reinstatement of the unchallenged portions of the award, consistent with this opinion.

Affirmed in part; reversed in part and remanded.

WOLFSON and BRADEN, JJ., concur.