SECOND DIVISION

December 26, 2000

No.  1-99-2439

WATER PIPE EXTENSION, BUREAU OF )

ENGINEERING LABORERS' LOCAL 1092, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

)

)

CITY OF CHICAGO, ) Honorable

a Municipal Corporation, ) Stephen A. Schiller,

) Judge Presiding.

Defendant-Appellant. )

JUSTICE GORDON delivered the opinion of the court:

Defendant, the City of Chicago (the "City") appeals from the judgement of the circuit court of Cook County in favor of plaintiff Water Pipe Extension, Bureau of Engineering Laborers' Local 1092 (the "Union") which vacated two arbitration awards.  Those awards attempted to resolve a dispute between the City and the Union over the construction of certain provisions in a collective bargaining agreement entered into between them.  The arbitrators found for the City but both awards were vacated and remanded for re-arbitration by the trial court pursuant to the Union's petition to vacate.  On re-arbitration, the arbitrators issued supplemental awards refusing to modify their original decisions.  The trial court vacated the supplemental awards and remanded to a new arbitrator for re-arbitration on the issue of damages alone.  The City moved to vacate the new award, which the trial court refused to do and entered judgement on the award.  It is from this judgement that this appeal is brought.  For the reasons discussed below, we reverse.

FACTS

The following facts are undisputed.  In 1992, the City's Department of Water decided to increase the rate at which it was replacing certain water mains.  The City began to look for outside sub-contractors to perform water main replacement work in addition to the work being performed by the City's employees.  The relationship between the City and the Union is governed by a collective bargaining agreement (the "agreement") between the two parties.  The agreement specifically addresses the issue of subcontracting and spells out the rights of the parties when the City wishes to subcontract work. 

The agreement (the relevant portions of which are set out below in the analysis section of this decision) provides in article 27 that certain rights, including the right to subcontract, belong exclusively to the City subject to further limitations in the agreement.  In article 20, section 20.1 the agreement provides for the establishment of a subcommittee "to examine all subcontracting situations to determine how such work could alternatively be, or continue to be, performed" by the City without subcontractors.  Section 20.2 provides that the City will attempt to have City employees perform the work instead of subcontractors where practicable.  It requires, among other things, that the City provide the Union with all bid specifications and guidelines provided to potential subcontractors "including a description of the work to be performed, any known impact upon bargaining unit employees, and other relevant data necessary for the Union to submit proposals." It further provides that 10 days after such information is received by the Union, the Union will provide the City with a proposal for the use of City employees instead of subcontractors.  Within 10 days after the submission of the proposal, the subcommittee will meet and review the Union's proposal.

On March 12, 1993, the City notified the Union of a bid announcement for the subcontracting of a portion of the work and offered to make bid specifications available to the Union.  At the request of the Union the bid specifications and proposed contracts were forwarded to it by the City on April 21, 1993.  The parties then met on May 14, 1993.  At that meeting the Union argued that it would be more cost-effective for the City not to subcontract the work, however, the City responded that it wished to conduct a three-year study to compare the performance of work done by subcontractors and City employees.  

At the further request of the Union, the City, on May 20, 1993, provided additional information including bid sheets submitted by the lowest bidders.  Thereafter the Union responded that the information provided by the City was inadequate and asked for detailed "actual cost" information claiming that it was entitled to that information under the "other relevant data" provision of the agreement.  On June 30, 1993, the City responded that the information requested by the Union was not available because the City did not maintain records in that format.  As a result, the Union refused to submit a proposal of its own pursuant to section 20.2 on the asserted ground that it did not believe that it had sufficient information to draft a proposal.  On July 1, 1993, the City gave the Union 30 days notice that its proposed contracts with the subcontractors would be finalized. 

The Union subsequently filed a grievance (No. 1993-24) on July 14, 1993, alleging that the City had violated the subcontracting provisions of the agreement when it hired outside contractors to perform some of its water main construction projects.  This grievance was submitted to arbitrator Edwin H. Benn ("Benn").  At the arbitration the Union argued that the City did not comply with sections 20.1 and 20.2 of the agreement because the subcommittee did not meet before the decision to subcontract was made as required by section 20.1; because the City did not provide the Union with the "other relevant information" which it requested pursuant to section 20.2; because the City failed to work cooperatively with the Union as required by section 20.2 and because the City did not attempt to keep the work in house where practicable as required by section 20.2.  On April 9, 1995, arbitrator Benn issued his decision in that arbitration, finding in favor of the City in that the City had not breached the agreement. 

In his award, arbitrator Benn emphasized the City's right to subcontract under article 27 of the collective bargaining agreement.  While the Union argued that the meeting of the article 20 subcommittee on subcontracting was a condition precedent to any decision by the City to subcontract, Benn disagreed.  Rather, Benn found that the specific requirement of section 20.2 which specifies that the subcommittee is to meet after a proposal is made by the Union prevails over the general language establishing the subcommittee in section 20.1.  

Benn also found that the City had not failed to provide the Union with the information required by the contract because the information which the City refused to provide was not relevant.  His conclusion was premised on the City's undisputed assertion that it did not use that information in its costing process, a process which the City had the right to determine.  Benn further found that the City had not breached its obligation to cooperate with the Union, as the City and the Union "went back and forth" over the Union's information request for 48 days, a request which Benn found to be irrelevant.  Benn found that, contrary to the Union's contention, the City had not breached its obligation to attempt to have employees perform the work where practicable.

On October 20, 1993, the Union filed a second grievance (No. 1993-30) involving the same collective bargaining agreement but relating to subcontracting in the City's Department of Sewers.  This dispute was submitted to arbitration before a different arbitrator, Marvin F. Hill ("Hill").  On July 5, 1995, arbitrator Hill issued an award in favor of the City with respect to the second grievance purporting to follow arbitrator Benn's decision pursuant to "principles of 
res judicata
."
(footnote: 1)  Arbitrator Hill reasoned that if "the issue is the same, the contractual language is the same, the same arguments are being made and the arbitrator cannot find any significant factor that would warrant ignoring the first award, then relitigation of the issue should not be allowed."  

On September 15, 1995, the Union filed a petition in the circuit court of Cook County asking that the awards of arbitrators Benn and Hill be vacated.  At the hearing on that petition the Union contended that Benn's award eviscerated the provisions of article 20 which require the City to provide the Union with "other relevant data."  The Union also argued that Benn effectively eliminated the provision of article 20 requiring the subcommittee to meet before any subcontracting occurred.  The Union further contended that Benn negated the provisions of  article 20 requiring the City to work cooperatively with the Union and to attempt to perform the work in-house where practicable.
(footnote: 2)
 On August 16, 1996, the able trial judge vacated both awards and remanded the case for re-arbitration.  The court indicated that it thought the contract was "not really clear" and that "it could have been written better."  The court reasoned that there was "absolutely no evidence at all that the City did anything at all to attempt to keep the work" in-house.  The court also stated that although there would have to be a "bid received from the Union" in order to require the subcommittee to meet under 20.2, this does not "save the day for the City because of the lack of compliance with the spirit of 20.1 and the letter of 20.1."  The court finally stated that it vacated the award because "there is no basis for [the arbitrators'] finding that the City complied with its responsibility to work cooperatively with the Union in exploring alternatives in-house to the subcontracting of outside work" and determined that the award needed to be re-arbitrated because the "award was not predicated upon an adequate record."

The court, however, did not take issue with arbitrator Benn's finding that the City did not fail to provide the Union with "other relevant data" as required under section 20.2.  The court pointed to testimony by the City at the arbitration hearing which indicated that it would be impractical to retrieve the information in the format requested by the Union.  The court then stated that there "is a difference between relevant data that they could by spending money [and] time [put] together and relevant data that is available and *** [arbitrator Benn] *** made the determination that the available [relevant data] is what they [the Union] are entitled to."

On re-arbitration both arbitrators Benn and Hill issued supplemental awards in which they both stood by their original awards and refused to make any modifications.  Subsequently, on February 19, 1997, the Union moved to vacate the new awards from arbitrators Benn and Hill and asked that those grievances be remanded to a different arbitrator.  The court agreed, and entered an order vacating the supplemental awards of Benn and Hill and provided for a further remand of both matters to a new arbitrator.  The parties then entered an agreed order that on remand the issue would be limited to damages after a contractual violation by the City as found by the trial court in its orders vacating the arbitration awards.  They also agreed that the City would not waive its arguments that it had not violated the agreement and its argument that the trial court erred in finding that it had.  On remand the new arbitrator, Peter Feuille, thereupon found a specific amount of damages.  The City moved to vacate Feuille's award, but the court declined to do so.  This appeal followed.

ANALYSIS

The City contends that the trial court erred in vacating the first arbitration award because that award drew its essence from the agreement and therefore was not subject to further review on the merits.  The Union contends that arbitrator Benn's award did not draw its essence from the agreement because the award negated article 20 of the agreement.  Specifically, the Union argues that in his award arbitrator Benn ignored the plain and fundamental purpose and language of article 20 of the agreement in addressing the issues of when the City must convene a subcommittee on subcontracting; in defining what constitutes "other relevant data" which the City must provide to the Union in order to allow the Union to make a proposal for the use of employees in place of subcontractors; as to whether the City attempted to have employees perform bargaining unit work where practicable and as to whether the City worked cooperatively with the Union.  The Union also contends that arbitrator Benn ignored the rules of contract interpretation.  We agree with the City.

"The question of whether an arbitrator exceeded his authority is one of law, subject to 
de novo
 review."  
City of Chicago v. American Federation of State, County and Municipal Employees, Council 31
, 283 Ill. App. 3d 446, 451, 669 N.E.2d 1311, 1314 (1996).  There can be no question that an award will be vacated if the arbitrator exceeds his authority.  
American Federation of State, County and Municipal Employees, AFL-CIO v. State
, 124 Ill. 2d 246, 254, 529 N.E.2d 534, 537 (1988) (hereinafter "
American Federation
") ("scope of an arbitrator's power generally depends upon what the parties agreed to submit to arbitration").  That authority is ordinarily determined by the provisions of the arbitration agreement.  
American Federation
, 124 Ill. 2d at 254, 529 N.E.2d at 537.  Moreover, under the provisions of the Illinois Uniform Arbitration Act 710 ILCS 5/1 
et seq.
 (West 1999), as well as the common law, the arbitrator may not change or alter the terms of the collective bargaining agreement, but is authorized only to interpret its existing provisions.  See generally, 
Board of Trustees of Community College District No. 508, Cook County v. Cook County College Teachers' Union, Local 1600, AFT, AFL/CIO
, 74 Ill. 2d 412, 419, 386 N.E.2d 47, 50 (1979) (common law); 
Rauh v. Rockford Products Corporation
, 143 Ill. 2d 377, 391-92, 574 N.E.2d 636, 643 (1991) (Uniform Arbitration Act).
(footnote: 3)
 Generally, the 
vacatur
 of arbitration awards is governed by the Illinois Uniform Arbitration Act.  710 ILCS 5/1 
et seq.
 (West 1999).  The grounds under which an arbitration award may be vacated are those specified in section 12(a) of the Act.  710 ILCS 5/12(a) (West 1999).  Section 12(a) provides that an arbitration award may be vacated if:

"(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award."  710 ILCS 5/12(a) (West 1999).

In construing section 12(a)(3) our supreme court has stated that "if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of the contract, then the court would be bound to vacate or refuse to confirm the award."  
Rauh
, 143 Ill. 2d at 391-92, 574 N.E.2d at 643.  

However, section 12(e) of the Act states that with regard to "any award entered as a result of an arbitration agreement which is part of or pursuant to a collective bargaining agreement *** the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act."  710 ILCS 5/12(e) (West 1999).  Thus in collective bargaining cases the courts have thus applied the standards which existed for vacating an arbitration agreement at common law.  
American Federation of State, County and Municipal Employees, AFL-CIO v. Department of Central Management Services
, 173 Ill. 2d 299, 671 N.E.2d 668, 672 (1996) (hereinafter "
Central Management Services
"); 
Chicago Transit Authority v. Amalgamated Transit Union Local 308
, 244 Ill. App. 3d 854, 859, 614 N.E.2d 120, 123 (1993).  

The common law grounds for vacating an arbitration award "are fraud, corruption, partiality, misconduct, mistake or failure to submit the question to arbitration."  
Board of Education of the City of Chicago v. Chicago Teachers' Union, Local No. 1
, 86 Ill. 2d 469, 474, 427 N.E.2d 1199, 1200 (1981) (citing 
White Star Mining Company v. Hultberg
, 220 Ill. 578, 601-10, 77 N.E. 327, 335-39 (1906)
).
(footnote: 4)  Under the common law standard "a court is duty bound to enforce a labor-arbitration award if the arbitrator acts within the scope of his or her authority and the award draws its essence from the parties' collective-bargaining agreement."  
Central Management Services
, 173 Ill. 2d at 304-05, 671 N.E.2d at 672.  See also 
American Federation
, 124 Ill. 2d at 254, 529 N.E.2d at 537.
(footnote: 5)  This standard, while controlling in collective bargaining situations, is not controlling with regard to other arbitration disputes.  
Rauh
, 143 Ill. 2d at 391-92, 574 N.E.2d at 643.  As construed, this common law standard limits the power of review in a collective bargaining agreement case to an even greater degree than the standard enunciated for all other non-collective bargaining disputes.  
Chicago Transit Authority
, 244 Ill. App. 3d at 863, 614 N.E.2d at 126 ("common law review of arbitration awards in proceedings under collective bargaining agreements is more deferential than statutory review").

Under the "essence of the agreement" standard "[w]e inquire into the merits of the arbitrator's interpretation in an effort to determine only if the arbitrator's award drew its essence from the agreement so as to prevent a manifest disregard of the agreement between the parties."  
Board of Trustees
, 74 Ill. 2d at 421, 386 N.E.2d at 51 (citing 
Ludwig Honold Manufacturing Company v. Fletcher
, 405 F.2d 1123, 1125-128 (1969), 
Teamsters Local Union No. 394 v. Associated Growers of Iowa Cooperative, Inc.
, 263 N.W.2d 755, 757-58 (1978)).  "In deciding whether an award draws its essence from the agreement, a court determines whether the arbitrator limited himself to interpreting the collective bargaining agreement; if not, the award violated the agreement to arbitrate."  
Board of Education of Community High School District No. 155 v. Illinois Educational Labor Relations Board
, 247 Ill. App. 3d 337, 345, 617 N.E.2d 269, 275 (1993).  "An award based on the arbitrator's personal or policy views rather than on the contract is unenforceable."  
Chicago Typographical Union v. Chicago Sun-Times, Inc.
, 935 F.2d 1501, 1505 (1991) (Posner, J.).  Under this applicable standard the courts will not overrule a contractual interpretation of the arbitrator merely because it differs from that which the court considers to be the more correct interpretation.  
Central Management Services
, 173 Ill. 2d at 305, 671 N.E.2d at 672 ("Because the parties have contracted to have their disputes settled by an arbitrator *** it is the arbitrator's view of the meaning of the contract that the parties have agreed to accept.  We will not overrule that construction merely because our own interpretation differs from that of the arbitrator"). 

For the reasons articulated below we conclude that arbitrator Benn did not negate any provision of the collective bargaining agreement, and more specifically any portion of article 20 thereof, in his first award and that his first award derived its essence from the agreement between the parties.  The relevant portion of article 20 states as follows:

"
Section 20.1 -- Subcommittee

The Employer [City] and the Union shall establish a subcommittee to examine all subcontracting situations to determine how such work could alternatively be, or continue to be, performed by the Employer except in emergency situations.  The Employer members will work cooperatively with the Union so that the Union may submit proposals, as provided in Sections 20.2 and 20.3.

Section 20.2 -- Prevailing Rate Jobs

As to prevailing rate jobs covered by this Agreement, the Employer will attempt to have employees perform bargaining unit work where practicable.  Bid specifications or guidelines which will be used by or required from contractors will be provided to the Union at the same time as made public or conveyed to potential contractors, including a description of the work to be performed, any known impact upon bargaining unit employees, and other relevant data necessary for the Union to submit proposals under this Article.  The City will provide the Union with the proposed awardee's proposal.  Within 10 working days of receipt thereof, the Union will provide the City with any proposal.  Within 10 working days thereafter, the Committee established under Section 20.1 will meet, review the proposals of the Union and compare such proposals to any bid or proposal being considered for acceptance in order to comply with Section 20.1.  The City's decision shall be communicated to the Union and shall not be unreasonably delayed by this process." 

We first find that arbitrator Benn's decision that the meeting of the subcommittee is not a condition precedent to a decision by the City to subcontract finds support within the provisions of the agreement.  As arbitrator Benn noted in his second award, nothing in the plain language of article 20, section 20.1 or 20.2 requires the meeting of the subcommittee as a condition precedent to the City's decision to subcontract. There is no specific requirement for the subcommittee to meet until a proposal is received from a subcontractor, transmitted to the Union and a counterproposal is received by the City from the Union.  There is no dispute that in this case a proposal from a subcontractor was received and transmitted to the Union.  However, the Union did not submit a proposal of its own.  Therefore, the triggering event for a meeting of the subcommittee never took place.

The Union apparently argues that this interpretation gives effect to section 20.2 while negating section 20.1, as it makes 20.1 meaningless.  The Union would argue that the inference to be drawn from section 20.1 is that the subcommittee is to meet preliminarily before any decision is made by the City to subcontract in order to determine on a more general basis if such a procedure is advisable.  We favor arbitrator Benn's interpretation.  However, more overridingly, we need not consider which interpretation is more meritorious but only whether the arbitrator's interpretation has threshold feasability under the provisions of the agreement so as to derive its essence from the agreement.  
Central Management Services
, 173 Ill. 2d at 305, 671 N.E.2d at 672.  

Under arbitrator Benn's interpretation, section 20.1 merely sets out the requirement that a subcommittee be established without specifically mandating any meeting requirements.  According to Benn only section 20.2 describes specifically when the subcommittee is required to meet.  This interpretation is consonant with the actual language in each of these provisions and does not reflect any overt contradiction between them.  Moreover, even if these two sections were deemed to be inconsistent, this interpretation conforms to the cannon of contract construction that where two sections of a contract are in conflict, the more specific one will prevail.  
Heifner v. Board of Education
, 32 Ill. App. 3d 83, 88, 335 N.E.2d 600, 604 (1975) ("Where one intention is expressed in one clause *** and a different conflicting intention appears in another *** that intention should be given full effect which appears in the more principal and specific clause, and *** the general clause should be subjected to such modification or qualification as the specific clause makes necessary").  Thus it is readily manifest that regardless of the merit of any other interpretation, the interpretation of article 20 by arbitrator Benn more than satisfies the requirement that it must draw its essence from the agreement.  Once we reach that conclusion, no further review by the trial court or this court is appropriate.

Secondly, we also find that arbitrator Benn's interpretation of the meaning of "other relevant data" draws its essence from the contract.  In his determination that the additional data requested by the Union (consisting of individual job files on previously performed jobs) was not relevant, arbitrator Benn specifically gave effect to section 20.2 and article 27 of the contract.  Benn rejected the City's argument that under the agreement the Union was merely placed on equal footing with bidders in terms of the information which it was to receive, specifically because the Union is entitled under section 20.2 to receive other "relevant" information in addition to the information given to prospective bidders.  However, arbitrator Benn noted nowhere in the contract is "relevant" defined.  Failing to find guidance in the agreement, Benn defined "relevant" as a technical, legal term which would deem relevant any information which would have "any tendency to make the existence of any fact that is of consequence more probable or less probable then it would be without the evidence."  Benn then concluded that because the information requested by the Union was not used by the City in estimating the cost of the work, it was not of any consequence.  Arbitrator Benn further reasoned that the City had the right to decide what forms of information to use in estimating the costs of a job pursuant to article 27 of the agreement which gives the City broad discretion in determining the processes, character and methods of its operations.  Here too, regardless of any other possible interpretations, we can not say that arbitrator Benn's interpretation fails to draw its essence from the contract.

Likewise we also find that arbitrator Benn's determination that the City did not violate its obligation to cooperate with the Union drew its essence from the contract.  Arbitrator Benn found that the City provided the Union with all the information that it was required to provide under the terms of the agreement.  He also found that the City was not required to meet with the subcommittee, since under section 20.2 of the agreement the submission of a proposal by the Union is a condition precedent to any meeting of the subcommittee which the Union failed to meet.  

We further find that arbitrator Benn's determination that the City did not violate its obligation under section 20.2 to have employees "perform bargaining unit work where practicable" draws its essence from the contract.  This provision can readily be construed as being merely precatory.  The fulfillment of the desire expressed by this language would therefore come under the subsequent provisions of section 20.2 which, as previously noted, would require the submission of certain information to the Union along with the subcontractor's proposal and the receipt from the Union of its proposal.  As construed by the arbitrator, the City met all of its obligations under these provisions and accordingly satisfied the provisions of section 20.2.  Therefore, here as well, the arbitrator's determination satisfies the standard that it must draw its essence from the agreement.

Finally, we need not belabor our rejection of the Union's argument that arbitrator Benn did not utilize standard principals of contract construction in arriving at his decision.  Contrary to the Union's contentions, arbitrator Benn followed established principals of statutory construction in interpreting the agreement.  Arbitrator Benn found, as we discussed in detail above, that the specific provisions of article 20 do limit the City's article 27 right to subcontract.  Benn found, however, that this limitation does not render a meeting of the subcommittee to be a condition precedent to the decision by the City to subcontract.

While the Union disagrees with arbitrator Benn's interpretation of the agreement, it is his interpretation for which they bargained, not that of a court.  
Central Management Services
, 173 Ill. 2d at 305, 671 N.E.2d at 672.  Thus the parties must live with the arbitrator's interpretation even if it is incorrect so long as it can be said to derive its essence from the agreement.  
Lyons v. Norfolk & Western Railway Company
, 163 F.3d 466, 470 (1999) ("it is not whether the arbitrator erred in interpreting the contract *** it is whether [he] interpreted the contract").

For the reasons discussed above, the judgement of the circuit court of Cook County vacating the awards of arbitrators Benn and Hill is vacated and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed; cause remanded.

COUSINS and McBRIDE, JJ., concur.

FOOTNOTES
1:
We note, however, that arbitrator Hill although leaving the same result as was left by arbitrator Benn in the first arbitration did find that under the provisions of the collective bargaining agreement the City was required to convene a subcommittee and ordered the City to do so within 30 days.

2:
Neither of the parties distinguished between the awards of arbitrators Benn and Hill in their briefs, nor do we make such a distinction in our analysis section.  The references to arbitrator Benn and his awards can thus be construed to apply equally to arbitrator Hill and his awards.

3:
In the case at bar the collective bargaining agreement also echos those limitations on the power of the arbitrator stating at article four, "[t]he arbitrator shall have no power to amend, add to, subtract from, or change the terms of this Agreement, and shall be authorized only to interpret the existing provisions of this Agreement and apply them to the specific facts of the grievance or dispute."

4:
There is no suggestion in the briefs that the court dismissed the arbitration award due to any of the 
White Star
 factors (fraud, corruption, partiality, misconduct, mistake or failure to submit the question to arbitration).

5:
We follow the "essence of the agreement" standard in this case because the arbitration award herein was entered pursuant to a collective bargaining agreement.  However, we find that the result in this case would be the same even if we were to follow the other, "reasonable minds" standard.