2022 IL App (1st) 210551-U

FIFTH DIVISION
June 30, 2022

No. 1-21-0551

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 700, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 20 CH 5727 |
| COUNTY OF COOK and THOMAS J. DART, in his OFFICIAL CAPACITY AS SHERIFF OF COOK COUNTY, | ) ) ) ) | Honorable Neil H. Cohen, Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's judgment granting the defendants' motion to dismiss is affirmed.

¶ 2    The plaintiff-appellant, International Brotherhood of Teamsters Union No. 700 (the Union), and the defendants-appellees, County of Cook and Thomas Dart, in his official capacity as sheriff of Cook County (collectively, the defendants), entered into a collective bargaining agreement (CBA) and signed a Letter of Agreement regarding roll call pay. A grievance dispute

was brought by the Union against the defendants regarding certain bargaining units[1] not having received roll call pay to which the union alleged they were entitled. The Union requested a decision on the matter by an arbitrator. The arbitrator conducted a hearing and ruled that the Transportation and Support Services units were not entitled to roll call pay. The Union disagreed and filed a petition in the circuit court of Cook County to vacate the arbitrator's award. The defendants filed a motion to dismiss the Union's petition, which was granted by the circuit court. On appeal, the Union argues that the circuit court erred by granting the motion to dismiss its petition since the Union adequately pled that: (1) the arbitrator in his award exceeded his authority; and (2) the arbitrator's award contained gross errors of facts. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      The Union, a labor organization representing a segment of employees working at the Cook County Department of Corrections, entered into a CBA with the Cook County Department of Corrections and the Cook County Sheriff's Office effective from 2017 through 2020. During the negotiations, which culminated in the creation of the CBA, the parties also negotiated a Letter of Agreement, which would provide bonuses for bargaining-unit officers and investigators who participate in their unit's roll call. The Letter of Agreement specifically stated:

> "The parties agree that Officers/Investigators who participate in roll call shall be compensated in the form of two (2) yearly payments of five hundred ($500) dollars in June and December of every year. Any Officer/Investigator in a paid status at least twenty percent (25%) of the period shall be eligible to receive the

---

[1]A bargaining unit is a group of employees whom a labor union represents in negotiations and grievance disputes.

entire benefit. This shall remain in full force and effect until the Union and Sheriff reach an alternate agreement. Both parties agree to meet in good faith to work on alternate solutions."

¶ 5    A dispute subsequently arose among the parties over the interpretation of the CBA and the interpretation of the Letter of Agreement regarding roll call pay for employees in the Vocational Rehabilitation Impact Center (VRIC), Transportation, and Support Services units. As a result, the Union filed grievances regarding the roll call payments not being given to certain bargaining units despite the Letter of Agreement requiring such payments. Specifically, the payments to the VRIC, Transportation, and Support Services units were at issue. The Union filed grievances and sought arbitration in accordance with the CBA. On May 28, 2019, the arbitrator conducted a hearing on the grievances and witnesses gave testimony in the hearing.

¶ 6    At the conclusion of the hearing, the arbitrator issued a written award. The arbitrator's written findings detailed the positions of the parties. In describing the Union's position, the arbitrator defined roll calls as starting 15 minutes prior to the beginning of a work shift. According to the Union's position, one of the main features of roll call is "to inform the incoming shift of compound-wide information and information specific to the unit. If a Department [of Corrections] member did not appear for roll call, they were subject to discipline."

¶ 7    As part of the arbitrator's award, he cited various parts of the CBA and general orders of the specific agency. The general order 3.15, which pertained to roll call regarding certain employees, states in the procedures section that "roll call training sections will be conducted by each division of the Department [of Corrections] which holds a formal roll call." The sessions are to be conducted by the shift commander based upon current general orders among other things. One of the duties and responsibilities of the Transportation Unit Lieutenant, contained within

Policy 1301, is to conduct roll call which includes, in a nonexhaustive list, (1) uniform inspections; (2) roll call training; (3) dissemination of information from the previous shifts; (4) provide instruction on the Department of Corrections' policies and procedures; (5) reading memorandum; (6) distribution of paperwork; (7) and providing sworn members with their assignments.

¶ 8    The arbitrator ruled in his award that the Union had not proven that the Transportation unit had roll calls after the parties entered into the Letter of Agreement. The arbitrator's written award explicitly stated, "[a]lthough there is a requirement for the Lieutenants to conduct roll call, the record does not contain convincing evidence that roll calls were being conducted in these units. To the contrary, the evidence establishes a muddled approach to when work began." The arbitrator cited a transportation officer's testimony, which stated that attendance prior to the beginning of a shift was lackadaisical, with some officers arriving early, some less than 15 minutes before, or others right at the beginning of the work shift. The officers who showed up at the start of the work shift were given information by their supervisors or their partners. Although the Union submitted to the arbitrator a videotape of a roll call being conducted by the Transportation unit, there was "no evidence of frequency, duration, or timing" of that or any other roll call. The arbitrator determined that the videotape, which was taken about 9 minutes prior to the start of a work shift, did not show that a roll call was held or that one was held *after* the Letter of Agreement was signed as is required by the agreement. The arbitrator stated that officers in the Transportation unit were not required to attend roll call and there was no discipline for those who failed to attend.

¶ 9    Regarding the Support Services unit, which operates within the Sanitation Department, the arbitrator explained that the Union had not proven that roll calls occurred at all. The arbitrator referred to the union steward for that unit who testified that he is the only one in the unit who arrives early for the work shift and there is no punishment for workers who do not arrive early.

Some of the evidence presented also included email correspondence from employees within the Sanitation Department. There were complaints that they were not receiving overtime pay for staying past their shift as a result of not having a roll call.

¶ 10    However, the arbitrator found that, based on the evidence presented, the VRIC unit was entitled to roll call payment because they conducted formal roll calls. The arbitrator even ordered the first annual roll call payment of $500 in 2019 for the VRIC unit because it conducted roll call through the end of January 2019. Alternatively, the arbitrator found that the Transportation and Support Services units did not conduct roll call. Accordingly, the arbitrator denied the Union's grievances regarding the Transportation and Support Services units but granted it regarding the VRIC unit.

¶ 11    The Union filed a petition in the circuit court of Cook County to vacate the arbitrator's award. The petition alleged that the arbitrator exceeded the scope of his authority in issuing his award in stating that the Transportation and Support Services units did not have roll calls. The Union alleged that these units had roll calls and the reason the arbitrator made that finding was because he "modified, negated, and/or disregarded the CBA, issuing an award that failed to derive its essence from the collective bargaining agreement." In its argument on this issue, the Union asserted that "[a] court may vacate an arbitration award if a gross error of law or fact appears on the face of the award." The petition went on to claim that the arbitrator's award stated that no roll calls occurred in the Transportation and Support Services units despite those units, according to the Union, having roll calls before and after the Letter of Agreement. Notably, the Union's petition did not state what, if anything, constituted a gross error of law or fact in the arbitrator's award. The Union also alleged that the award violated public policy.

¶ 12    In response to the Union's petition to vacate the arbitrator's award, the defendants filed a motion to dismiss the petition in the circuit court of Cook County pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)). The motion argued that the petition should be vacated because the Union had a high hurdle to meet its burden of proof of showing that no interpretive route of the CBA could lead to the arbitrator's award. The defendants further argued that the Union could not meet its burden since the arbitrator found that the Union did not factually establish that roll call occurred in the disputed units. The defendants' motion to dismiss also asserted that the Union's public policy argument was too broad to state a proper claim.

¶ 13    On April 13, 2021, without a hearing, the trial court issued a written ruling on the motion to dismiss. In its order, the court stated that the arbitrator found that the evidence presented by the Union "did not establish that the Transportation and Support Services Units participated in roll call. The [a]rbitrator did not, as asserted by the Union, find that the Union was required to establish mandatory, frequent, or routine roll calls." The court pointed out that the arbitrator found that the VRIC unit, even though it only participated in roll call through January of 2019, was entitled to the first of the two annual roll call bonuses for 2019. The court also found that the Letter of Agreement can clearly be interpreted to support the arbitrator's conclusion and the written award was based on the language of the Letter of Agreement rather than based on the arbitrator's personal beliefs. The court further ruled that the arbitrator's award did not violate public policy. We note that, on appeal, the parties do not challenge that ruling regarding public policy. The trial court held that the Union's petition to vacate the arbitrator's award was dismissed with prejudice. On May 12, 2021, the Union filed a notice of appeal.

¶ 14                                    ANALYSIS

¶ 15    We note that we have jurisdiction to consider this matter, as the Union filed a timely notice of appeal following the trial court's judgment. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 16    On appeal, the Union presents the following issue: whether the trial court erred in granting the defendants' motion to dismiss. The Union argues that its petition to vacate the arbitrator's award adequately pled that (1) the arbitrator's award failed to draw its essence from the CBA, and (2) the arbitrator's award contained gross errors of fact. Accordingly, it asks that we reverse the trial court's dismissal of its petition to vacate the arbitrator's award.

¶ 17    When reviewing an order granting a motion to dismiss, we must determine whether the allegations of the plaintiff's complaint, viewed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Beahringer v. Roberts*, 334 Ill. App. 3d 622, 626 (2002). "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Spencer v. Ryland Group*, 372 Ill. App. 3d 200, 203 (2007). "While a section 2-615 motion to dismiss admits all well-pleaded facts as true, it does not admit conclusions of law or factual conclusions which are unsupported by allegations of specific facts." *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors*, 275 Ill. App. 3d 452, 456-57 (1995). After disregarding any legal or factual conclusions, we must determine whether the remaining factual allegations are sufficient to state a cause of action, and if so, the motion to dismiss should be granted. *Advance Mechanical Contractors*, 275 Ill. App. 3d at 457. Despite looking at the plaintiff's complaint in the light most favorable to the plaintiff, "factual deficiencies may not be cured by liberal construction." *Advance Mechanical Contractors*, 275 Ill. App. 3d at 457. The standard of review for a motion to dismiss is *de novo*. *Illinois Insurance Guaranty Fund v. Liberty Mutual Insurance*

*Co.*, 2013 IL App (1st) 123345, ¶ 14. A court of review can affirm the trial court on any basis supported by the record. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 18    Here, the Union's petition to vacate the arbitrator's award was dismissed on the basis that it failed to state a claim upon which relief could be granted. The Union contends that its petition *did* state a claim because it adequately pled that the arbitrator's award failed to draw its essence from the CBA and that the arbitrator added non-contractual conditions that roll calls had to meet before employees could receive the bonus outlined in the Letter of Agreement. The Union, therefore, avers that the trial court should not have dismissed its petition to vacate the arbitrator's award.

¶ 19    Our analysis requires us to examine the applicable judicial standard for reviewing an arbitrator's award. The Union has attached the award to its petition as an exhibit and, it is therefore part of the pleadings. Judicial review of an arbitrator's award is very limited. *American Federation of State, County & Municipal Employees v. State*, 124 Ill. 2d 246, 254 (1988). Because of this limited review, "a court is duty bound to enforce a labor-arbitration award if the arbitrator acts within the scope of his or her authority and the award draws its essence from the parties' collective-bargaining agreement." *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304-05 (1996). "In deciding whether an award draws its essence from the agreement, a court determines whether the arbitrator limited himself to interpreting the collective bargaining agreement; if not, the award violated the agreement to arbitrate." *Board of Education of Community High School District No. 155 v. Illinois Educational Labor Relations Board*, 247 Ill. App. 3d 337, 345 (1993). " 'An award based on the arbitrator's personal or policy views rather than on the contract is unenforceable.' " *Water Pipe Extension, Bureau of Engineering Laborers' Local 1092 v. City of Chicago*, 318 Ill. App. 3d 628,

637 (2000) (quoting *Chicago Typographical Union v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir.1991)). Under that standard, a court will not overrule an arbitrator's interpretation of a contract just because "it differs from that which the court considers to be the more correct interpretation." *Water Pipe Extension*, 318 Ill. App. 3d at 637.

¶ 20    Our review of the arbitrator's award, in this case, shows that the arbitrator stated the Union did not sufficiently prove that the Transportation and Support Services units conducted roll calls after the Letter of Agreement was signed. The Union alleged a factual conclusion that the disputed units were holding roll call before and after the Letter of Agreement without factual allegations to support that claim. The Union also pled in its petition that the arbitrator, in his award, stated that he was not granting roll call bonuses for the Transportation and Support Services units because the roll call was not mandatory, frequent, or routine. However, that is not an accurate description of the arbitrator's ruling. Rather, the arbitrator stated that the video, which purportedly showed a roll call in the Transportation unit, showed no evidence of "frequency, duration, or timing." Thus, the arbitrator found that the Transportation unit did not have roll call; instead, there was a muddled approach to when work began, no discipline for officers who failed to attend roll call, and no requirement for them to attend. Thus, it is clear that the Union's allegation, which argues that the arbitrator based his ruling on whether the roll call was mandatory, frequent, or routine, misstates the substance of the arbitrator's written award.

¶ 21    If the factual or legal conclusions and the factual inaccuracies are removed, we are left with the Union's assertion that this court can vacate an award by the arbitrator if the award does not draw its essence from the CBA. This assertion standing alone clearly does not state a claim that the arbitrator acted in a way that was outside the scope of his authority. As such, the petition to vacate the arbitrator's award as to this issue was properly dismissed by the circuit court on that

basis.

¶ 22    Additionally, the Union argues that the arbitrator made a gross error of fact in that he stated that the Transportation and Support Services units did not have roll calls despite his finding that there was insufficient evidence of roll call frequency, duration, or timing and that attendance was not required. The Union essentially argues that the arbitrator cannot say that there was no roll call but then say that the roll calls were not organized in a manner that would qualify them for a payment.

¶ 23    This argument by the Union is essentially another way to attack the language of the arbitrator's award, and we will not revisit our aforementioned analysis of how this argument misstates the arbitrator's award. However, we find that this argument of a gross error of law or fact, is not supported in any way by the record and was not fully presented to the trial court. Rather, the Union simply recited the legal principle, which states that a court may vacate an award if a gross error of law or fact appears on the face of the award. However, the Union failed to allege *what* constituted the gross error of law or fact. Nowhere in its petition is there support for this factual conclusion. Therefore, the bare allegations of gross error of fact or law also are insufficient to state a claim and, as such, were properly dismissed by the trial court. Accordingly, the trial court did not err by dismissing the Union's petition to vacate the arbitrator's award.

¶ 24                                   CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County, dismissing the Union's petition to vacate the arbitrator's award.

¶ 26    Affirmed.